**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NUMBER: 94-157** |
| **LAMONT GROSS** | **SECTION: "B"** |

**ORDER AND REASONS**

Before the Court are defendant Lamont Gross' motion to revise and modify sentence (Rec. Doc. 50) and the government's opposition (Rec. Doc. 55). After careful consideration,

**IT IS ORDERED** that the defendant's motion to revise and modify sentence is **DENIED**.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On August 19, 1994, Defendant Lamont Gross ("Gross") pled guilty to bank robbery (count 1) under 18 U.S.C. § 2113(a); possession of a weapon in relation to a crime of violence (count 2) under 18 U.S.C. § 924(c); and felon in possession of a firearm (count 3) under 18 U.S.C. § 922(g)(1). Rec. Doc. 55 at 1. He was sentenced to concurrent forty-six (46) month prison terms on counts 1 and 3, and a consecutive sixty (60) month prison term on count 2, as well as a three-year term of supervised release. Rec. Docs. 31, 55.

Gross began supervised release on April 26, 2002. He subsequently violated supervised release conditions by committing two additional crimes while under supervision for a short period of time. Rec. Doc. 55 at 1. First, only about 8-months into supervision on December 18, 2002, Gross was arrested by the St. Charles Parish Sheriff's Office for armed robbery, possession of a firearm by a convicted felon, and battery of a police officer.[1] *Id.* He pled guilty to armed robbery and was sentenced to a seventy-five (75) year prison term. *Id.* at 2. Second, only about 2-months later on February 11, 2003, Gross commits another offense by escaping from the St. Charles Parish Sheriff's jail where he was being held after the armed robbery sentence. *Id.* Gross pled guilty to simple escape and was sentenced to a prison term of twenty-seven (27) months. *Id.*

On August 16, 2006, Gross admitted to committing above violations of supervised release conditions. *Id.* The Honorable Helen G. Berrigan revoked his supervised release and sentenced Gross to twenty-four (24) months in prison as to counts 1, 2, and 3, to run concurrent with each other and consecutive to the armed robbery conviction in St. Charles Parish. *Id.*

---

[1] According to the facts established during the plea colloquy and the sentencing hearing, defendant walked into the Rousel's gift and jewelry shop in Boutte armed with a 9mm semi-automatic handgun. *See State v. Gross*, 05-903927, p. 2-3; 927 So. 2d 583, 584 (La. App. 5th Cir. 3/28/06). Defendant ordered the store patrons into a back room, held the gun to the store manager/owner, and robbed the store of a large amount of jewelry. *Id.* Police were waiting outside and arrested defendant as he walked out of the store. *Id.*

2

On June 15, 2022, defendant was granted parole by the Louisiana Pardon and Parole Board with respect to the two St. Charles Parish state convictions. *Id.* He remained in custody under a federal detainer for the federal sentence. *Id.* On July 8, 2022, the defendant filed the instant *pro se* motion to revise and modify sentence. *Id.*

## II. LAW AND ANALYSIS

### A. Applicable Law for a Compassionate Release

For a federal court to consider a motion for compassionate release, a defendant must first exhaust his administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Such exhaustion occurs either when: (1) a defendant has completely appealed the BOP's refusal "to bring a motion on the defendant's behalf" or (2) a defendant's request remains unanswered by his warden after thirty days. *Id.* The Fifth Circuit describes exhaustion as a "mandatory claim-processing rule." *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021). Consequently, such a rule provides that "all requests for compassionate release must be presented to the Bureau of Prisons before they are litigated in the federal courts." *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 920 (2020). There are no exceptions to this rule. *Id.* ("Congress has commanded that a 'court *may not* modify a term of imprisonment' if a defendant has not filed a request with the BOP.") (Emphasis original).

3

Further, it is the defendant's burden to prove exhaustion. *See United States v. Vedros*, No. 14-237, 2020 WL 2838589, at *2 (E.D. La. June 1, 2020), *appeal dismissed*, No. 20-30511, 2021 WL 3627258 (5th Cir. Mar. 16, 2021); *United States v. Baker*, No. 16-179, 2021 WL 5356911, at *2 (E.D. La. Nov. 17, 2021) ("A prisoner must demonstrate that he has exhausted his administrative remedies"); *United States v. Carter*, No. CR 05-229, 2021 WL 1295103, at *1 (E.D. La. Apr. 7, 2021) ("The defendant bears the burden of demonstrating exhaustion"). When a defendant fails to comply with this exhaustion rule, a court will deny their compassionate release motion. *See, e.g.*, *Franco*, 973 F.3d at 467. Although the Fifth Circuit "applies less stringent standards to parties proceeding *pro se* . . . and liberally construes briefs of *pro se* litigants," procedural requirements still remain. *Johnson v. Gonzalez*, 172 F.3d 869, 869 (5th Cir. 1999); *see also United States v. Rinestine*, 834 F. App'x 953, 954 (5th Cir. 2021).

However, to assert an exhaustion failure, the government must raise the exception. *United States v. McLean*, No. 21-40015, 2022 WL 44618, at *1-2 (5th Cir. Jan. 5, 2022) (vacating the denial of a compassionate release when the government did not raise the issue and remanding the case); *United States v. Snodgrass*, 857 F. App'x. 819, 820 (5th Cir. 2021) (affirming the denial when "[t]he Government raised the exhaustion rule in the district court."). In other words, a court cannot find exhaustion failure *sua sponte*.

4

*McLean*, No. 21-40015, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022) (finding the district court abused its discretion).

### B. Defendant has failed to prove exhaustion and his motion must be denied.

In the instant case, defendant's motion must be denied. While titled a "Motion to Revise and Modify Sentence," defendant is effectively asking for a compassionate release. The government raised exhaustion in its opposition, thus, the Court has the authority to consider the issue. Rec. Doc. 55 at 4. Here, Gross did not exhaust or assert exhaustion of administrative remedies. He has neither completely appealed any refusal by the BOP to bring a motion on his behalf nor has any request by the defendant gone unanswered by his warden for more than thirty days. Therefore, defendant has failed to carry his burden of proving exhaustion of administrative remedies and thus, his motion must be denied.

### C.  Alternatively, the motion lacks merit.

Gross seeks to have the instant 24-month federal sentence for supervised release violations changed from running consecutively to the state court armed robbery and escape sentences to run concurrently with the state court sentence. After being granted parole on the state prison sentence in June 2022, the federal detainer caused continued incarceration due to the consecutive nature of the foregoing 24-month federal sentence. His release is projected to occur no later than June 2024, possibly as early as April 2024.  As basis for that change, he argues that becoming

5

a mentor to younger prison inmates, a self-help student, church member, and other prison activities have made him a model prisoner. He also argues that unspecified prison studies conclude longer prison terms do not necessarily reduce the likelihood of reoffending.

Gross fails to show compelling reasons to warrant reduction of his consecutive sentence. Apparently, the record of reoffending while only in confinement for a short prison term did not reduce Mr. Gross' likelihood of reoffending. As shown above, within 8-months after placement under supervised release, he's arrested and later pled guilty to the state offense of armed robbery. To further aggravate his situation and rebut the argument presented about long custodial confinement, he reoffends within 2-months after sentencing on the armed robbery offense by escaping from custody at a local parish jail. Rec. Doc. 55. To his credit, he acknowledged and accepted responsibility for committing those violations leading to the revocation sentence at issue. He is also commended for seeking better life skills while in custody. However, to the extent he seeks compassionate release, rehabilitation alone is not a compelling reason to grant relief. See e.g. 28 U.S.C. § 994(t). Moreover, his pattern of quickly committing various serious state crimes shortly after placement on court supervision negates a change of the instant sentence. See 18 U.S.C. §§ 3553(a) and 3582(c)(1)(A). It is also notable that Gross

6

was under state parole supervision at the time he committed the underlying federal offenses of bank robbery, possession of a weapon in relation to a crime of violence, and felon in possession of a firearm.

Accordingly, the record and applicable law do not warrant a sentence reduction, modification, or compassionate release. The sentence by Judge Berrigan remains just punishment but not more than necessary to best meet the goals of sentencing, i.e. to promote respect for law and discourage future violations. *See United States v. Brown*, 829 F.App'x 697, 698 (5th Cir. 2020).

New Orleans, Louisiana, this 7th day of March 2024

_____
SENIOR UNITED STATES DISTRICT JUDGE